NicholsoN, C. J.,
delivered the opinion of the Court.
In the spring of 1861 John W. Saunders, having pitched a small crop of cotton and corn, lost his only horse, and applied to John Sullivan for a horse to plow his crops. Thereupon they made a contract, by which Sullivan was to furnish a horse and have the necessary plowing done, and the crops made were to be equally divided between them. They made cotton enough for three bales, which was carried to the gin of Ramsey, who ginned it in January or February, 1862. Not long before the Federal forces took possession of Bolivar, in Hardeman county, which was about the 6th of June, 1862, Sullivan hauled the three bales from the gin, and deposited them for safety in an old field. In 1867 Saunders sued Sullivan for one-half of the value or proceeds of the threé bales of cotton, claiming as his share of the same $457.50. Defendant resisted the suit, denying that he owed anything for the cotton, • and claiming set-off in the shape of notes and accounts, etc. The jury found for Saunders the amount claimed, with interest, and allowed a portion of Sullivan’s set-offs. From the judgment rendered Sullivan’s administrator appeals to this Court.
The first ground for reversal relied on is, that the evidence does not support a verdict for the plaintiff below. This ground is not well taken. There is a direct conflict between the swearing of plaintiff below and the witnesses for defendant. The evidence shows that Saunders is a man of extreme ignorance and *489 weakness of intellect, approaching mental imbecility, and liable to be easily imposed upon; and that Sullivan was a shrewd,' keen trader. It shows that Saunders is strictly honest, and that his evidence is entirely reliable. With the witnesses all before the Judge and the jury, with full opportunities to determine their credibility and weigh their testimony, the jury gave credit to the evidence of Saunders and his witnesses. We can not undertake to say that their verdict was not supported by the preponderance of the evidence; on the contrary, we are satisfied with their finding.
It is next insisted that there is no evidence to support the finding of the jury as to the value of the cotton. This point is not free from difficulty. B,am-sey, the, ginner, proves that Sullivan hauled the cotton away from the gin a short time before Bolivar was occupied by the Federal troops; that at that time there were no cotton buyers and no market for cotton; that cotton rose, and about the 1st of September he sold cotton in Louisville, Kentucky, for thirty cents a pound in gold, and that sixty cents a pound in greenbacks was the market price. On the other hand, Sullivan proved, by several witnesses, that they sold cotton in the spring of 1862 at eight cents a pound. This was evidently before Bolivar was occupied by the Federal forces, and when there was no market for cotton, and before Sullivan took possession of the three bales. There was no other proof as to the value of cotton, nor is it shown when Sullivan sold the cotton, or at what price he sold it. Saunders proves that, *490 while the Federáis were in Bolivar, but he does not fix the time, he called on Srdlivan for his portion of the proceeds of the cotton, but that he refused to account for it, not denying but that he sold the cotton, but saying that there was no law to force him to pay; that he must wait until the war was over, and significantly referring to his pistol, belted round him, as the way of paying debts then in force. We infep from this that Sullivan had then sold the cotton; but all we can infer as to the time is, that it was after the Federáis took possession of Bolivar, and while they remained there.
It is to be observed, that as Sullivan and Saunders were tenants in common of the three bales, Sullivan was guilty of no conversion in hauling it from the gin and hiding it in a place of safety. The conversion took place after the Federáis occupied the country, and when he sold and refused to account to Saunders for his portion of the proceeds.
There is much conflict in the authorities, English and American, as to the rule for estimating the damages for conversion of personal property — especially in regard to that which has no fixed and permanent value, but which is constantly fluctuating in price or value. Some of the authorities hold, that the plaintiff may elect to recover the highest value between the time of conversion and the final trial 'of the cause. Others, that the value at the time of the conversion, with interest by way of damages, is the general rule— subject to modifications under peculiar circumstances. Others again . hold that the plaintiff should not be *491 limited to the time of the actual conversion, but that he should have a reasonable time, after being apprised of the conversion, to elect the value which he will claim.
Mr. Sedgwick, p. 556, says: “I have already had occasion to notice the claim of damages for the use of property which has been sold and its price paid, between the time when the cause of action accrues and that of trial; and the analogous question where the use of property is withheld; and we have seen that different rales have been prescribed by different tribunals. The same analogies should govern in trover; and it appears to me, that in principle, unless the plaintiff has been deprived of some particular use of his property, of which the other party was apprised, and which he may thus be said to have directly prevented, the rights of the parties are fixed at the time of the illegal act, be it refusal to deliver, or actual conversion, and the damages should be estimated as at that time.”
This rule, as laid down by Mr. Sedgwick, is substantially the rule which seems to have been recognized by this Court in the cases of Jones v. Allen, 1 Head, 626; Doak v. Snapp, 1 Col., 180, and Cochran v. Tucker, 3 Col., 186. 'Without considering the modification to which the rule is subject under particular circumstances, it is sufficient for the present case, that in accordance with the general principle, Saunders was entitled to receive from Sullivan the value of the cotton at the time he made the demand and Sullivan refused to account, which time, though not definitely *492 fixed, we think from all the circumstances is reasonably shown to have been in the summer of 1862. It is in proof that the price of cotton rose after the Federáis occupied, and went on rising in September, 1862, having reached sixty cents a pound in greenbacks in Louisville, Kentucky.
It is next insisted, that the price of cotton at Louisville, Kentucky, was not proper evidence by which to estimate the value of cotton at Bolivar, Tennessee. It can not be held that the proof of the value of cotton at Louisville, Kentucky, was incompetent, and therefore illegally admitted, even if it had been objected to, but as there was no other evi-nence, -was that sufficient to support the verdict of the jury ? A question analogous to this was presented in the case of Doak v. Snapp, 1 Col., 180, in which it was held, that it was competent to ascertain the value of specific stocks in Greene county, Tennessee, by referring to the principal stock markets of the cities, where there was a market for such stocks. The reason given for the rule was, that inasmuch by a few days travel or transmission by mail, the highest price for the stocks might be obtained, therefore, the prices in those cities where the stocks had a market, could be properly looked to in ascertaining the value in Greene county, where there might be no market for them. This reasoning is equally applicable to cotton, which was not only an article of traffic but constituted a main supply of exchange. If .cotton was worth sixty cents a pound, in greenbacks, in Louisville, Kentucky, it was easy, on account of facili *493 ties furnished by railroad communication^ to ascertain the value at Bolivar, Tennessee. We are therefore of opinion that the evidence was not only competent, but that, according to the established rule, we can not disturb the finding of the jury as to the value of the cotton.
It is next insisted, that the Circuit Judge erred in excluding two notes, offered by defendant by way of set-off, because they were not properly stamped. This was error, but it is said for plaintiff, that the error resulted in no injury to defendant, as the Judge instructed the jury, that although they could not regard the notes as evidence, they could look to the accounts for which the notes were given. This answer to the objection is conclusive, if it appears by the record that the accounts were passed upon by the jury. The two notes excluded were — one for $30, which is shown by the evidence to have been given by plaintiff to defendant’s widow and administratrix, for two hogs killed by plaintiff in the lifetime of Sullivan. Saunders admitted in his examination, that he killed the hogs to keep them out of his cornfield, and that he gave his note to Sullivan’s administratrix for $30 for the hogs, and that it is the note offered as a set-off. As the plaintiff admitted the debt of $30, it is therefore clear that the defendant was not injured by the exclusion of the note. The other note excluded was for 750 pounds of seed cotton, given in November, 1863, and payable in the fall of 1864, for a bay horse. The pleadings show that plaintiff contested this note upon the grounds that the horse. *494 was diseased;^that defendant knew of tbe unsoundness, and was guilty of fraud in tbe trade, and that there was a total failure of consideration. These matters were contested by the parties in the proof, and therefore the exclusion of the note could not injure the defendant. The question whether the defendant was guilty of fraud in the sale of the horse, and whether the consideration failed in whole or in part, was submitted fully and fairly to the jury. The verdict shows that the jury allowed defendant set-off to the amount of $100.57. By reference to the different set-offs offered by defendant, it is clear that the jury allowed the $30 note, and disallowed the claim for 750 pounds of seed cotton for the horse.
We are therefore of opinion that defendant sustained no injury by the error in excluding the two notes for want of stamps.
The whole case was submitted to the jury under a charge that is unexceptionable; they have weighed the evidence and judged of the credibility of the witnesses, and found .for the plaintiff.
We see no error for which the case ought to be reversed. Judgment affirmed.